## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

CIVIL ACTION NO.:   1:25-cv-3205

JOHN DOE,[1]

      Plaintiff,

v.

UNITED STATES CENTER FOR SAFESPORT, and
MELISSA VIGIL, individually and in her official capacity,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, John Doe, by and through counsel, the Savela Law Firm, P.C., as and for his Complaint[2] against Defendants United States Center for SafeSport and SafeSport investigator, Melissa Vigil, respectfully alleges as follows:

### THE NATURE OF THE ACTION

1.    Plaintiff, John Doe, challenges the U.S. Center for SafeSport's authority to investigate and adjudicate the allegations against him. Specifically, the Center exceeded its jurisdiction by exercising jurisdiction over conduct that involved a non-athlete and did not involve sport, conduct not covered under the U.S. Center for SafeSport's SafeSport Act.[3] 36 U.S.C. § 220541(a)(1)(B).

2.    Plaintiff further alleges that the U.S. Center for SafeSport and its investigator, Melissa Vigil, contravened SafeSport's own rules and violated SafeSport's own internal

---

[1] Plaintiff filed a Motion for Leave to Proceed Under Pseudonym "John Doe" seeking authorization to file this Complaint as a pseudonymous Plaintiff contemporaneously with this Complaint.
[2] Plaintiff's Complaint include four Exhibits. Due to the confidential nature of the Exhibits, Plaintiff intends to file a Motion for Leave to Restrict, pursuant to D.C.COLO.LCivR 7.2 within ten days of filing this Complaint, as set forth in his Notice Regarding Plaintiff's Exhibits.
[3] The Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017 (hereinafter, the "Act" or "SafeSport Act") codified the U.S. Center for SafeSport, a 501(c)(3) nonprofit, as the nation's safe sport organization.

policies by not only investigating and adjudicating claims outside of its jurisdiction, but also failing to afford Plaintiff due process, as required by the SafeSport Act.

3.      Congress did not give SafeSport the power to regulate all aspects of a Participant's life. Congress only gave SafeSport the power to protect amateur athletes from abuse in sports.

4.      Importantly, Plaintiff is not asking this Court to address concerns over his eligibility. Instead, Plaintiff challenges the inequity and injustice created by the Center's malicious refusal to comply with the SafeSport Act.

## THE PARTIES

5.      Plaintiff, John Doe, is a citizen and resident of the State of Georgia subject to Defendant SafeSport's authority granted under federal law.

6.      Defendant, United States Center for SafeSport ("SafeSport" or "the Center") is a private nonprofit corporation formed and existing under the laws of the State of Colorado. The Center is recognized by the United States Congress, the United States Olympic & Paralympic Committee (USOPC), and the National Governing Bodies (NGBs) as the official safe sport organization for all Olympic, Paralympic, Pan American, Para Pan America sports in the United Sates. The Center maintains two offices – an office for education and outreach and an office for response and resolution.

7.      Defendant, Melissa Vigil, is a citizen and resident of the State of Colorado. Defendant Vigil is and was an investigator for the U.S. Center for SafeSport. Defendant Vigil was the investigator in Plaintiff's case.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 because this case presents claims arising under the United States Constitution and federal

statutes. This Court also has jurisdiction to grant a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 because an actual controversy exists among the parties.

9.    This Court has original jurisdiction over this action because this case relates to the responsibilities of the Center under section 220521 of the SafeSport Act. 36 U.S.C. § 220541(d)(3)(A).

10.    Venue is appropriate under 28 U.S.C. § 1391(a), (b)(1), (b)(3), (c)(2), and (d).

11.    Incorporating the State of Colorado's statute of limitations (see C.R.S. §13-80-102), the two-year statute of limitations for this matter has not expired.[4]

### FACTUAL ALLEGATIONS

### I.    The Statutory Framework

12.    In 1978, Congress passed the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. § 220501 *et seq.*, which tasked the United States Olympic & Paralympic Committee (USOPC) with the responsibility for governing the Olympic and Paralympic Movement in the United States.

13.    Under the statutory framework of the Amateur Sports Act, the USOPC recognizes a National Governing Body (NGB) for each Olympic sport, and each NGB is a member of the USOPC.

14.    The USOPC began the process of creating the United States Center for SafeSport ("Center" or "SafeSport") as an entity within its authority sometime prior to 2011.

15.    On December 5, 2014, USOPC incorporated SafeSport with a principal office address of One Olympic Plaza, Colorado Springs, Colorado (the same address as USOPC).

16.    Thereafter, the USOPC formed a working group with NGBs to draft policies governing emotional, physical, and sexual abuse in sports, including the complaint,

---

[4] Plaintiff's claims accrued on or around October 10, 2023, the date Plaintiff received the final, non-appealable decision. *See* Ex. 4 (Hearing Decision).

investigation, and adjudication process, for the purpose of ***safeguarding amateur athletes against abuse in sports.***

17.     In 2018, Congress passed the SafeSport Act, which amended the Amateur Sports Act in several respects.

18.     The 2018 Amendment made SafeSport independent of USOPC and empowered SafeSport to "exercise jurisdiction over" USOPC and NGBs on matters related to abuse against amateur athletes in sports. 36 U.S.C. § 220541(a)(1)(B).

19.     The 2018 Amendment gave SafeSport limited legislative, regulatory, administrative, and enforcement powers.

20.     The 2018 Amendment declared that SafeSport "shall . . . serve as the independent national safe sport organization and be recognized worldwide as the independent national safe sport organization for the United States," and "exercise jurisdiction over the [USOPC], each [NGB], and each paralympic sports organization with regard to ***safeguarding athletes against abuse***, including emotional,  physical, and sexual abuse, ***in sports***." *Id.* § 220541(a)(1)(A)-(B) (emphasis added).

21.     The 2018 Amendment also provided regulatory and enforcement powers to the Center, including mandating that the Center shall "maintain an office for response and resolution that shall establish mechanisms that allow for the reporting, investigation, and resolution . . .of alleged sexual abuse in violation of the Center's policies and procedures," and "ensure that [these] mechanisms . . . ***provide fair notice and an opportunity to be heard*** . . . ." *Id.* § 220541(a)(1)(D)-(E) (emphasis added).

22.     In the 2018 Amendment, Congress explicitly required that SafeSport publicly identify persons barred by the Center on its website. *Id.* § 220541(a)(1)(G).

23.     In 2020, Congress passed the Empowering Olympic and Amateur Athletes Act of 2020, which amended the SafeSport Act in several respects, including adding section 220541(a)(1)(H), which expanded the Act's requirement "to provide fair notice and an

opportunity to be heard," and required the Center to provide "procedural due process" to an accused Participant in every step of the investigation and resolution process.

24.     Under the SafeSport Act, "the Center's duties include maintaining an office for investigating and resolving allegations of abuse *committed against athletes*." *Dames v. U.S. Ctr. for SafeSport*, No. 1:25-CV-03503, 2025 U.S. Dist. LEXIS 87124, *2 (N.D. Ill. May 7, 2025) (emphasis added) (citing 36 U.S.C. § 220541(a)(1)(D)).

25.     The SafeSport Act requires the Center to provide "procedural due process" to an accused Participant in every step of its investigation and resolution process, "including, at a minimum," written notice of allegations against the subjects of the investigation, the right to counsel or another advisor, the opportunity to be heard during the investigation, a written reasoned decision if a violation is found, and the ability to challenge any sanctions imposed as a result. 36 U.S.C. § 220541(a)(1)(H)(i)-(iv).

26.     The SafeSport Act empowers the Center to "exercise jurisdiction over the corporation and each [NGB] with regard to *safeguarding amateur athletes* against abuse . . . *in sports*." *Id*. § 220541(a)(1)(B) (emphasis added).

27.     Pursuant to the SafeSport Act, the Center is required to "maintain an office for education and outreach that shall develop training, oversight practices, policies, and procedures to *prevent abuse* . . . *of amateur athletes participating in amateur athletic activities* through [NGBs]." *Id*. § 220541(a)(1)(C) (emphasis added).

28.     Pursuant to the SafeSport Act, the Center is required to maintain an office for compliance and audit that shall "ensure that the [NGBs] and the corporation implement and follow the policies and procedures developed by the Center *to prevent and promptly report instances of abuse of amateur athletes* . . . ." *Id*. § 220541(a)(1)(F)(i).

29.     The SafeSport Act also permits the Center to use a "neutral arbitration body" to determine eligibility, § 220541(c)(1), and the Center indeed has established an

arbitration process, SafeSport Code, Article XIV (Arbitration Rules). *See* Ex. 1 (SafeSport Code for the U.S. Olympic and Paralympic Movement, effective April 1, 2020).

30.     The SafeSport Act expressly authorizes federal courts to hear claims arising from SafeSport's operations and decisions. 36 U.S.C. § 220541(d)(3); *see Navarro v. U.S. Ctr. for SafeSport*, No. 3:24-cv-00030, 2025 U.S. Dist. LEXIS 7929, * 22 (W.D. Va. Jan. 15, 2025).

31.     Importantly, the SafeSport Act "does not contain any clear statement limiting the court's subject matter jurisdiction over claims arising from SafeSport decisions." *Navarro*, 2025 U.S. Dist. LEXIS 7929, * 22 (concluding that the Act does not deprive the district court of subject matter jurisdiction over Plaintiff's claims arising from SafeSport's decisions).

32.     Pursuant to the SafeSport Act, Defendant SafeSport developed a Code of Conduct that outlines behaviors constituting an abusive act. Ex. 1, SafeSport Code, Article IX (Prohibited Conduct). The applicable Code in this case became effective April 1, 2020. *Id.*

33.     The Code is administered by Defendant SafeSport. The USOPC, the NGBs, and other affiliated organizations "must comply, in all respects, with these policies and procedures and shall be deemed to have incorporated the provisions into their relevant policies as if they had set them out in full therein." Ex. 1, Article II.

34.     Pursuant to the SafeSport Act, Defendant SafeSport developed Resolution Procedures that are used to investigate and resolve matters within its jurisdiction. Ex. 1, SafeSport Code, Article XI (Resolution Procedures).

35.     Pursuant to the SafeSport Act, Defendant SafeSport is required to ensure that the mechanisms that allow for reporting, investigation, and resolution of alleged sexual abuse in violation of the Center's policies and procedures "provide fair notice and an opportunity to be heard." 36 U.S.C. § 220541(a)(1)(D), (E).

36.     Pursuant to the SafeSport Act, Defendant SafeSport is required to "ensure that any action taken by the Center against an individual under the jurisdiction of the

Center, including an investigation, the imposition of sanctions, and any other disciplinary action, is carried out in a manner that provides procedural due process to the individual . . . ." 36 U.S.C. § 220541(a)(1)(H).

37.    Despite this requirement, the applicable Code in this case, effective April 1, 2020 (Ex. 1), did not include a provision regarding procedural due process. The following year, however, the Center amended the Code to include the following provision:

> Federal law provides Respondents with certain procedural rights. 36 USC § 220541(a)(1)(H). For any action taken against a Respondent, including an investigation, the imposition of sanctions, or any other disciplinary action, the Center must provide procedural due process to the Respondent, which includes: 1. The provision of written notice of allegations against the Respondent; 2. The right to be represented by counsel or other advisor; 3. An opportunity to be heard during the investigation; 4. A reasoned decision from the Center if a violation is found; 5. The ability to challenge through arbitration any temporary measures or sanctions imposed by the Center.

SafeSport Code, effective April 1, 2021,[5] Article XI.J.

38.    This procedural due process language appears in all subsequently amended codes, including the most recent amendment, effective July 1, 2024.[6]

39.    Defendant SafeSport bears the burden of gathering sufficient evidence to reach a determination, based on the preponderance of the evidence, that a Participant violated the Code. A "preponderance of the evidence" means "more likely than not." Ex. 1, SafeSport Code, Article XI.C.

---

[5] *See* SafeSport Code archives, https://uscenterforsafesport.org/code-archives/. As of today's date, SafeSport has amended the Code every year between 2017 and 2024. The latest amendment was effective July 1, 2024.
[6] *See* 2024 SafeSport Code, Article XI.J, https://uscenterforsafesport.org/wp-content/uploads/2023/03/2024_SafeSportCode-_073124_v3-A-.pdf. Subsequent versions of the Code also contain the following language: "The SafeSport Code and 36 USC § 220541(a)(1)(H) provide a Respondent with certain procedural due process protections. A Respondent who alleges violations of these rights can raise the claim before the arbitrator ***only if*** the Respondent has previously informed the Center of the alleged violation and given the Center an opportunity to cure the violation. An arbitrator can order a party to take any reasonable steps necessary to cure the violation, except for dismissal of the action." (emphasis added), *Id.* Article XIV.15.

40.     Defendant SafeSport's investigator has discretion to determine the relevance of any proffered evidence and decides whether to include or exclude certain types of evidence. Ex. 1, SafeSport Code, Article XI.M. Neither "relevant" nor "relevance" is defined in the SafeSport Code.

41.     Defendant SafeSport's investigator is prohibited from considering "statements of opinion as to any person's general reputation for any character trait, rather than direct observations or reasonable inferences from the facts." Ex. 1, SafeSport Code, Article XI.M.

42.     Following an investigation, a final Investigation Report is "prepared that sets forth the investigator's findings of fact and may make a recommendation as to whether the Code has been violated." Ex. 1, SafeSport Code, Article XI.N.

43.     Defendant SafeSport and the investigator determine "whether there is sufficient information, by a preponderance of the evidence, to support a finding that Respondent violated the Code." Ex. 1, SafeSport Code, Article XI.O.

44.     If Defendant SafeSport and the investigator determine that the Respondent violated the Code, the Decision will note the violation and identify the appropriate sanction. Both the Claimant and Respondent are notified of the Decision. *Id.*

45.     The Notice of Decision sets forth "any violation(s) of the Code, as supported by the rationale set forth in the decision and Investigation Report; the sanction(s) imposed against the Respondent (if applicable); and the rationale for any sanction(s) imposed." *Id.*

46.     Upon issuance of a Decision, a Respondent has ten days to request a hearing before an arbitrator. Ex. 1, Article XI(R).

47.     Possible sanctions include a written warning, probation, suspension or other eligibility restrictions, ineligibility, permanent ineligibility, and other discretionary sanctions. Ex. 1, SafeSport Code, Article XIII.A.

48.    According to the Code, the "Center **may** maintain a publicly-available searchable database of Participants who have been sanctioned by or whose eligibility has in some way been restricted by the Center." Ex. 1, SafeSport Code, Article XIII.C (emphasis added). This discretionary language suggests that the Center is not required to include sanctioned Participants on its database and also suggests that the Center can pick and choose which names to include (or not include) on the database.

49.    Defendant SafeSport's Arbitration Rules, set forth in Article XIV of the SafeSport Code, apply to arbitrations arising out of the Code and "are the sole and exclusive methods of resolving any challenge to the Center's eligibility decision(s) or the Center's processes." Ex 1, SafeSport Code, Article XIV.1.

50.    The arbitration body for USOPC arbitrations is JAMS.[7] Arbitration is prohibitively expensive (*see* Ex. 1, SafeSport Code, at Exhibit 1, JAMS Arbitrations fees),[8] but arbitration is the only method of resolving any challenge to the Center's eligibility decisions.

51.    According to the Code, "Arbitrations shall resolve whether a Respondent violated the Code and the appropriate sanctions." Ex. 1, SafeSport Code, Article XIV.2.

52.    The arbitration uses a preponderance of the evidence standard and does not conform to the legal rules of evidence. Ex. 1, SafeSport Code, Article. XIV.24 and XIV.25.

53.    Defendant SafeSport's Decision and Investigative Report with Appendices are considered during arbitration. Ex. 1, SafeSport Code, Article IIV.25. The arbitrator determines "the admissibility, relevance and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative, irrelevant or unreliable." *Id*. The Code does not define any of these terms and does not lay out how the arbitrator makes such determinations.

---

[7] JAMS, www.jamsadr.com.
[8] According to the Code in effect in 2020, a single arbitrator at that time cost $5200, and that cost does not include travel costs.

54.    Unless the parties agree that the arbitrator can determine the case without an oral hearing, and on written briefing alone, the arbitrator will hold an oral hearing. Ex. 1, SafeSport Code XIV.27.

55.    During arbitration, the Claimant is "subject to questioning by only the arbitrator unless the Claimant agrees to direct examination and cross-examination by the opposing party." Ex. 1, SafeSport Code, Article XIV.27(d)(1).

56.    Unless the Claimant elects to be questioned directly by the parties, "no later than five days before the hearing, the Center and the Respondent may each submit, *ex parte* to the arbitrator, proposed questions and lines of inquiry for the questioning of the Claimant."  The arbitrator determines which questions are "appropriate and relevant" and may ask any "other questions that the arbitrator deems appropriate." Ex. 1, SafeSport Code, Article XIV.27(d)(2).

## II.    Factual Background

57.    At the time of the alleged incident, John Doe was member of the U.S. Paralympic Snowboarding and U.S. Ski & Snowboard (USSS) and therefore a "Participant," as defined by the SafeSport Code. Ex. 1, SafeSport Code, Article VIII.J. Doe was 20 years old.

58.    At the time of the alleged incident, Jane Roe[9] was not an athlete and was not associated, in any way, with the Olympic and Paralympic Movement. Roe was a 26-year-old flight attendant.

59.    The alleged incident concerned a female non-athlete, Jane Roe, and occurred outside of sports, and therefore Defendant SafeSport did not have jurisdiction over the matter. *See* 36 U.S.C. § 220541(a)(1)(B) ("The United States Center for SafeSport shall . . . exercise jurisdiction over the corporation and each national governing body with regard to safeguarding amateur athletes against abuse . . . in sports.").

---

[9] Jane Roe is a pseudonym for the "Claimant" in this case.

60.     Despite Defendant SafeSport's lack of jurisdiction, the Center pursued the investigation and adjudication against Plaintiff that resulted in his permanent ban from U.S. Paralympic Snowboarding and a malicious and defamatory listing of Plaintiff, by name, on the Center's Centralized Disciplinary Database, expressly stating that he is permanently ineligible to participate in U.S. Paralympic Snowboarding due to sexual misconduct that remains on their website as of the date this Complaint was filed.[10]

**A.  Investigation and Notice of Decision**

61.     On September 23, 2020, the Center received an "Incident Report" alleging that Doe had a pending court case concerning an alleged incident in Denver County, Colorado on April 18, 2020.

62.     On March 15, 2021, the Center issued a Notice of Allegations & Imposition of Temporary Measures temporarily suspending Plaintiff from participation in the Olympic and Paralympic Movement.

63.     The Act expressly states that SafeSport shall exercise jurisdiction over the corporation and each governing body with regard to ***safeguarding amateur athletes*** against abuse . . . ***in sports***." 36 U.S.C. § 220541(a)(1)(B).

64.     Roe was not and is not an "amateur athlete" and the alleged incident did not occur "in sports." Therefore, Defendant SafeSport did not have jurisdiction over the alleged conduct.

65.     Defendant SafeSport proceeded with the case despite its lack of jurisdiction.

66.     Defendant SafeSport's temporary measures were upheld following a hearing on March 25, 2021.

67.     On April 14, 2021, Plaintiff's attorney advised Defendant SafeSport that Plaintiff would not agree to be interviewed until his criminal case was resolved.

---

[10] *See* U.S. Center for SafeSport, Centralized Disciplinary Database, https://cdd.uscenterforsafesport.org.

68.     On June 1, 2021, Defendant SafeSport issued a Notice of Decision finding a violation of the Code's prohibition of pending Criminal Charges or Dispositions and rendering Plaintiff ineligible until further notice.

69.     On July 1, 2021, following a jury trial, Doe was found ***not guilty*** of all charges, including sexual assault. Ex. 2 at 1342, 1346.

70.     On July 2, 2021, Defendant SafeSport rescinded the previously issued Notice of Decision and reopened the matter on July 6, 2021, despite its lack of jurisdiction.

71.     Defendant SafeSport erroneously relied upon the 2020 SafeSport Code, effective April 1, 2020 through March 31, 2021, despite rescinding the previous Notice of Decision and reopening the matter on July 6, 2021, after Doe was found ***not guilty*** of all charges, including sexual assault. The applicable SafeSport Code should have applied in this case was the 2021 SafeSport Code.[11] The 2021 SafeSport Code includes procedural due process requirements.[12]

72.     Upon information and belief, Defendant SafeSport continued to rely upon the 2020 SafeSport Code in order to intentionally deprive Plaintiff of the due process protections guaranteed in the subsequent versions of the SafeSport Code. Notably, the 2020 Amendments to the SafeSport Act (*see*, *supra*, ¶ 23) were signed into law on October 31, 2020. Therefore, they were in effect at the time Doe's case was reopened, on July 6, 2021.

73.     Defendant SafeSport continued to pursue this matter despite its lack of jurisdiction and despite the trial court's finding of ***not guilty***. Ex. 2 at 1342, 1346.

---

[11] SafeSport Code, effective April 1, 2021, https://uscenterforsafesport.org/wp-content/uploads/2021/04/SafeSportCode2021_040121_V3.pdf.

[12] Importantly, however, the SafeSport Act in effect at the time of the alleged conduct in this case includes the requirement that SafeSport must ensure that the mechanisms that allow for the reporting, investigation, and resolution of alleged sexual abuse "***provide fair notice and an opportunity to be heard***." 36 U.S.C. § 22041(a)(1)(D), (E) (emphasis added).

74. Defendant SafeSport deprived Plaintiff of fair notice and a meaningful opportunity to be heard despite the Act's requirement to "provide fair notice and an opportunity to be heard." 36 U.S.C. 220541(a)(1)(E).

75. Defendant SafeSport continued to deprive Doe of due process protections despite the 2020 Amendment to the SafeSport Act "ensur[ing] that any action taken by the Center against an individual under the jurisdiction of the Center, including an investigation, imposition of sanctions, and any other disciplinary action, is carried out in a manner that provides procedural due process to the individual . . . ." 36 U.S.C. § 220541(a)(1)(H).

76. Roe was interviewed by Defendant SafeSport and Defendant Vigil on August 4, 2021. Ex. 2 at 64-123.

77. On November 11, 2021, Defendant SafeSport issued another Notice of Allegations.

78. On January 21, 2022, Defendant SafeSport issued an updated Notice of Allegations.

79. On February 28, 2022, Doe's attorney provided Defendant SafeSport and Defendant Vigil with a transcript from the jury trial, including a transcript of Doe's testimony. Ex. 2, at 721-1344; *see also id.* at 626-712 (preliminary hearing transcript).

80. On June 20, 2023, Defendant SafeSport's Response and Resolution Office and Defendant Vigil issued a 37-page Confidential Investigation Report. Ex. 2, at 1-38. The Investigation Report included several Appendices, including Parties and Witnesses (Appendix A), Applicable Policies (Appendix B), Interviews (Appendix C), and Additional Information Considered (Appendix D). *Id.* at 38-1375. The Additional Information includes the trial transcripts. *Id.* at 721-1344; *see also id.* at 626-712 (preliminary hearing transcript).

81. Defendant SafeSport and Defendant Vigil made specific conclusions in the Investigation Report, including finding Roe "to be more credible than" Doe, despite

confirming that Roe failed to disclose oral sex to both police and SANE during her initial interviews. Ex. 2, at 37 (finding Roe's "explanation for the delayed disclosure plausible").

82.    In the Investigation Report, Defendant SafeSport and Defendant Vigil ignored relevant information that may have negatively impacted Roe's credibility, including

i.    Despite Roe testifying under oath denying a possible lawsuit against Doe and the USOPC, DA investigator Jason Cirbo testified Roe told him she was working with lawyers to sue Doe in Florida.

ii.    Despite the text messages just prior to going to the basement, Roe claimed she went to the basement after midnight to establish boundaries about not flirting.

iii.    Roe said she tried to tell Doe not to text so much and then texted with Doe all day long.

iv.    Despite Roe's offer to Doe and his friend to spend the night, Roe said Doe asked to crash at her house.

v.    Roe told Quinn Woodhouse that Doe started texting her, when, in fact, she started texting him.

vi.    Despite Quinn Woodhouse's testimony, Roe said Quinn Woodhouse yelled at her and blamed her.

vii.    Despite evidence showing Roe flirted with Doe, Roe said she did not flirt with Doe.

viii.    Despite common sense and context, Roe said "yeah for sure" means Doe was very upset, hurt, and rejected to such a significant degree, Roe needed to go to the basement after midnight to immediately resolve the issue with Doe.

ix.    Roe claims she told Officer VanPelt the alleged incident happened on the carpet, not the bed. However, after interviewing Roe regarding

evidence to collect from the basement, Officer VanPelt requested evidence collection and photos that did not include the carpet. Officer Van Pelt testified, if Roe told him it happened on the carpet, he would have collected and photographed the carpet.

    x.    Roe said the alleged incident happened on the carpet, but she had no rug burns or abrasions on her.

    xi.    Roe said Doe stood in front of her and put his penis in her mouth. However, Doe has only one leg and his prosthetic had been removed.

    xii.    Roe said she was in shock and could not say everything at the hospital. However, Officer VanPelt and the SANE said she was not in shock while at the hospital. The videos do not support that she was in shock.

    xiii.    Roe did not admit to oral sex until she became concerned that the oral swabs may have DNA evidence of penis skin cells, showing her story to be incomplete in a very intimate and hard to forget way.

83.    Defendant SafeSport and Defendant Vigil found that Doe's "credibility is challenged by the evidence," but the only evidence cited was Doe's text messages to Roe following the alleged incident. Ex. 2 at 37-38.

84.    In sum, Defendant SafeSport and Defendant Vigil ultimately found that everything Roe said was credible and everything Doe said was not, showing clear bias toward Doe. The jury verdict supports Doe's credibility. Ex. 2 at 1342, 1346.

85.    Ultimately, Defendant SafeSport and Defendant Vigil found that the entire incident was nonconsensual based primarily on unfounded credibility determinations. *Id.* at 4, 38.

86.    Defendant SafeSport and Defendant Vigil offer no support for their finding investigative finding other than unfounded credibility determinations.

87.     The standard of proof required is a preponderance of the evidence ("more likely than not"). The preponderance of the evidence in this case demonstrates that it is more likely than not that a violation did not occur. The jury verdict supports a finding that a violation did not occur. Ex. 2 at 1342, 1346.

88.     On the same day that the Investigation Report was issued, June 20, 2023, Defendant SafeSport's Response and Resolution Office issued a Notice of Decision. Ex 3.

89.     The Notice of Decision stated that the Center found Doe had violated the applicable policies. Ex. 3 at 1. The Notice also alerted Doe that he was "permanently ineligible from participating in the Olympic and Paralympic Movement." *Id*. at 2; *see also id*. at 10.

90.     Defendant SafeSport and Defendant Vigil showed bias against Doe throughout the investigation and resolution process and, in effect, did not afford Doe with a meaningful opportunity to be heard throughout the investigation and resolution process.

**B. Arbitration**

91.     Plaintiff submitted a timely appeal on July 12, 2023. Arbitrator, Caroline Antonacci, was assigned to serve as the Arbitrator in this matter.

92.     A preliminary hearing was held on August 16, 2023.

93.     Following detailed briefing, a hearing was held on October 2, 2023. The memoranda and exhibits were admitted into the record.

94.     Both Doe and Roe testified at the hearing.

95.     In making a determination, the arbitrator must use the preponderance of the evidence standard, and Defendant SafeSport bears the burden of proof. Ex. 1, SafeSport Code, Article XIV.24.

96.     In making a determination, "[o]nly the evidence and submissions necessary to the decision are discussed and analyzed." Ex. 4 at 6; *see also* Ex. 1, SafeSport Code, Arbitration Rules, Article XIV.25(c) (The arbitrator "determine[s] the admissibility,

relevance and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative, irrelevant or unreliable.").

97.     Defendant SafeSport's Arbitrator issued her decision on October 10, 2023. Ex. 4 (Hearing Decision). The Hearing Decision upheld, in its entirety, the findings in the Investigation Report and Notice of Decision, including finding that the sanction impose by Defendant SafeSport, permanent ineligibility, is an "appropriate sanction." *Id*. at 11.

98.     According to the Hearing Decision, "[c]ritically important to the determination of credibility are [Doe's] own text messages . . . ." *Id*. at 9. Defendant SafeSport's Arbitrator arbitrarily and erroneously "rejected" Doe's arguments concerning the texts.

99.     According to the Hearing Decision, Defendant SafeSport's Arbitrator "carefully observe[d]" Doe and Roe during the hearing "while they testified." *Id*. at 6. Yet, the Arbitrator's head was looking down during nearly the entire hearing. The Arbitrator did not "observe" any witness testify.

100.    As far as Doe's testimony, in the Hearing Decision, Defendant SafeSport's Arbitrator found that Doe "testified that he engaged in all the described sexual activity with [Roe] and that she consented to each of the acts." *Id.* That is the extent of the Arbitrator's discussion of Doe's testimony.

101.    In a showing of clear bias, Defendant SafeSport's Arbitrator found the following, "In powerful, detailed, and persuasive testimony supported and corroborated by other evidence, including [Doe's] numerous contemporaneous texts to [Roe], the Center rebutted this assertion and established that [Roe] did not consent and [Doe] violated the Code, as charged." *Id*. The Arbitrator "credited" Roe, found everything she said "persuasive," and noted that her testimony was corroborated by every other witness, complimenting her "willingness to participate." *Id.*

102.    Like Defendant SafeSport and Defendant Vigil's Investigation Report and Notice of Decision, Defendant SafeSport's Arbitrator wholly believed Roe's narrative and wholly disbelieved Doe's narrative. The preponderance of the evidence shows otherwise. Indeed, Defendant SafeSport's investigation and arbitration findings, including the determinations regarding Doe's credibility, are based solely on Doe's text messages.

103.    Defendant SafeSport, Defendant Vigil, and Defendant SafeSport's Arbitrator all fail to mention that Roe admitted at the hearing that she destroyed some text messages between her and Doe. Roe testified in the hearing that she deleted an unknown number of messages that did not support her story. At the trial, Roe testified that every text message between them was submitted by her and put in evidence. Destroying evidence harms a person's credibility. One does not destroy helpful evidence. Testifying falsely under oath at a criminal trial harms a person's credibility forever after. Not only did Defendant SafeSport's Arbitrator ignore this clear credibility problem for Roe, the Arbitrator found the incomplete texts to be critically important in determining Doe's lack of credibility and finding him responsible. This relevant evidence was omitted from the findings and not remotely considered as part of Roe's credibility determination. This is a clear violation of the requirement to provide a meaningful opportunity to be heard and a clear violation of Plaintiff's due process rights, as guaranteed by the SafeSport Act.

104.    Defendant SafeSport exceeded its jurisdiction and, along with Defendant Vigil, failed to comply with the requirements of both the SafeSport Act and the SafeSport Code.

105.    In the alternative, Defendant SafeSport's Code violates the requirements set forth in the SafeSport Act.

106.    Defendant SafeSport also breached its contractual commitments to Doe.

107.    Congress did not give Defendant SafeSport the power to regulate all aspects of a Participant's life. Congress only gave Defendant SafeSport the power to protect amateur

athletes from abuse in sports. Roe was not an athlete. The alleged misconduct did not occur in sports.

## COUNT I

### VIOLATION OF CONTRACTUAL DUE PROCESS
### (Against Defendant United States Center for SafeSport and Defendant Vigil)

108.    The foregoing allegations are incorporated as if fully set forth herein.

109.    The SafeSport Act explicitly grants "original jurisdiction" to the district court over cases relating to the responsibilities of Defendant United States Center for SafeSport. 36 U.S.C. § 220541(d)(3)(A); *Dames*, 2025 U.S. Dist. LEXIS 87124, *8.

110.    The SafeSport Act does not deprive this Court of subject matter jurisdiction over Plaintiff's claims arising from Defendant SafeSport's decisions. *Navarro*, 2025 U.S. Dist. LEXIS 7929, *22.

111.    Defendant SafeSport and Defendant Vigils contravened SafeSport's own internal rules, and therefore Plaintiff's claims are not preempted by the SafeSport Act. *See Dames*, 2025 U.S. Dist. LEXIS 87124, *15.

112.    Plaintiff has exhausted all internal remedies and imminent, serious irreparable harm will result to Plaintiff if the Court does not intervene in this case. *See Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 595 (7th Cir. 2001).

113.    The SafeSport Act requires Defendant SafeSport to "ensure that any action taken by the Center against an individual under the jurisdiction of the Center, including an investigation, the imposition of sanctions, and any other disciplinary action, is carried out in a manner the provides procedural due process to the individual, including at a minimum, (i) the provision of written notice of the allegations, against the individual; (ii) a right to be represented by counsel or other advisor; (iii) an opportunity to be heard during the investigation; (iv) in a case in which a violation if found, a reasoned written decision by the

Center; and (v) the ability to challenge, in a hearing or through arbitration, interim measures or sanctions imposed by the Center." 36 U.S.C. § 220541(a)(1)(H).

114.    The SafeSport Act requires Defendant SafeSport to ensure that any action taken by the Center against an individual under the jurisdiction of the Center, including an investigation, the imposition of sanctions, and any other disciplinary action, is carried out in a manner the provides procedural due process to the individual, including an opportunity to be heard. The opportunity to be heard includes a fair, complete, and impartial investigation, as well as a fair, unbiased decision based on evidence.

115.    Defendant SafeSport failed to follow its own rules by conducting an unfair and biased investigation and adjudication against Plaintiff.

116.    Defendant SafeSport failed to follow its own rules by pursuing a case against Plaintiff concerning conduct that was outside of its jurisdiction.

117.    Defendant SafeSport defamed Plaintiff by maliciously publishing his name on their Centralized Disciplinary Database, a public listing that expressly states that he is permanently ineligible to participate in the Olympic and Paralympic Movement due to sexual misconduct, destroying his career and reputation without adequate due process.

118.    Defendant SafeSport and Defendant Vigil deprived Plaintiff of a meaningful opportunity to be heard and ignored SafeSport's own rules by dismissing Doe's narrative without reason, despite Doe's narrative being corroborated by police interrogation two days after the alleged incident.

119.    The Investigation Report, the Notice of Decision, and the Hearing Decision fail to mention the police interrogation at all and appear to adopt, without evidence, a theory that Doe and his attorney "cobbled together" a narrative after the fact. This is speculation without evidence to support it.

120.    Defendant SafeSport, Defendant Vigil, and Defendant SafeSport's Arbitrator deprived Plaintiff of a meaningful opportunity to be heard and ignored SafeSport's own

rules by disregarding Roe's hearing testimony that she deleted texts, is unsure how many were deleted, and that she deleted them and destroyed exculpatory evidence because they made her look bad. These facts were ignored or dismissed by Defendant SafeSport, Defendant Vigil, and Defendant SafeSport's Arbitrator. These facts should have been considered as part of Roe's credibility analysis. Incomplete text messages should not have been used to negate Doe's credibility.

121.    Defendant SafeSport and Defendant Vigil deprived Plaintiff of a meaningful opportunity to be heard and ignored SafeSport's own rules by ignoring all evidence impacting Roe's credibility, including Roe's failure to report oral sex in her initial interviews. This issue, as well as others, was briefed in detail prior to the arbitration hearing, in part because of the volume of evidence the arbitrator needed to review. Roe's trial testimony on this issue shows her to be unreliable and discredits her entire testimony. Roe testified she failed to disclose oral sex to her mom, roommate, police officers, and the SANE because she could have kept her mouth closed. This answer suggests she knew she was not disclosing oral sex to these people when describing what happened, that she knowingly failed to tell the complete truth. Roe testified under cross that she did not remember the oral sex when she spoke with her roommate, the initial officer, and later with the SANE. Roe admitted in testimony she denied oral sex despite the SANE asking a direct question about putting his penis in her mouth. Roe testified the first time she spoke with the Detective, she did not remember the oral sex. She testified she finally admitted oral sex when the Detective told her, "we found evidence of [Doe's] genitalia in the swab." DNA testing had not been conducted when the Detective spoke with Roe. The recording does not have this statement in it. The Detective never said to Roe or anyone else, "we found evidence of [Doe's] genitalia in the swab." Roe's testimony conflicts with her own testimony, as well as with police evidence, on an extremely intimate sensory fact showing

her lack of reliability to relay facts to friends, police, medical providers, and jurors. These facts should have been considered as part of Roe's credibility analysis.

122.    Defendant SafeSport and Defendant Vigil deprived Plaintiff of a meaningful opportunity to be heard and ignored SafeSport's own rules by finding facts that require expert testimony, including evidence concerning Roe's alleged post-traumatic stress. The claimed post-traumatic stress was inappropriately used to support her credibility despite no expert testimony indicating the same.

123.    Defendant SafeSport, Defendant Vigil, and Defendant SafeSport's Arbitrator deprived Plaintiff of a meaningful opportunity to be heard and ignored SafeSport's own rules by ignoring the fact that Roe told police that the alleged incident happened on the carpet, while police testified that they would have collected the carpet if told it happened on the carpet. Police told Roe they were going to her house to collect evidence from the basement. Police collected evidence of bedding, to the exclusion of the carpet. Police photographed the bed and bedding, with the carpet never a central subject of a photograph.

124.    Defendant SafeSport, Defendant Vigil, and Defendant SafeSport's Arbitrator deprived Plaintiff of a meaningful opportunity to be heard and ignored SafeSport's own rules by ignoring Plaintiff's evidence and argument as found in his Answer to the Center, Response to Opening Brief, Addendum Response to Opening Brief, and Response to Reply Brief which show numerous reasons to doubt Roe's credibility. Plaintiff's evidence and argument were not addressed at all in the written decision violating the requirement of a reasoned written decision.

125.    The SafeSport Code fails to presume a respondent innocent or not responsible, unfairly placing a significant burden on respondent to prove his or her innocence, violating the meaningful opportunity to be heard and due process.

126.    Defendant SafeSport, Defendant Vigil, and Defendant SafeSport's Arbitrator deprived Plaintiff of a meaningful opportunity to be heard and ignored SafeSport's own

rules by predetermining Plaintiff's guilt despite the preponderance of the evidence showing that the alleged incident was entirely consensual.

127.     Defendant SafeSport, Defendant Vigil, and Defendant SafeSport's Arbitrator deprived Plaintiff of a meaningful opportunity to be heard and ignored SafeSport's own rules by failing to address any of the facts presented at trial and highlighted in Plaintiff's pre-hearing briefing regarding Roes admission to consensual kissing. The facts they find show a lack of awareness of what Roe admits to police and at trial about the kissing. It is hard to imagine they can find the facts as stated in their Decisions if they did read Roe's statements on this subject, especially after they were highlighted in Plaintiff's briefing prior to the hearing. Failure to review Plaintiff's evidence and argument violates the meaningful opportunity to be heard, as well as due process, and shows bias.

128.     As a result of these Defendant SafeSport and Defendant Vigil multiple failures to comply with SafeSport own internal rules, Plaintiff continues to suffer substantial injury, damage, and loss, including, but not limited to loss of his career and a malicious, defamatory listing on SafeSport's public database.

129.     As a result of the foregoing, Plaintiff has standing to seek, and is entitled to, an injunction (a) vacating the disciplinary findings and decisions; (b) granting an expungement of Plaintiff's disciplinary record; (c) removing any record of Plaintiff's permanent ineligibility from SafeSport's Database; (d) and permanently destroying any record of these allegations.

130.     As a result of the foregoing, Plaintiff is entitled to prospective injunctive relief against Defendants, and compensatory and punitive damages in an amount to be determined at trial, plus prejudgment interest, attorney's fees, expenses, costs, and disbursements.

**COUNT II**

**VIOLATION OF THE SAFESPORT ACT**
**(Against Defendant United States Center for SafeSport)**

131.    The foregoing allegations are incorporated as if fully set forth herein.

132.    The SafeSport Code exceeds the power granted by the SafeSport Act.

133.    The SafeSport Act empowers Defendant SafeSport to "exercise jurisdiction over the [USOPC] and each [NGB] with regard to safeguarding amateur athletes against abuse, including emotional, physical, and sexual abuse, in sports." 36 U.S.C. § 220541(a)(1)(B).

134.    The SafeSport Act does not grant SafeSport the power to exercise jurisdiction over conduct concerning nonathletes outside of sports.

135.    The SafeSport Act does not grant SafeSport the power to exercise jurisdiction over all aspects of any participant's conduct.

136.    The SafeSport Act explicitly grants "original jurisdiction" to district courts over actions "relating to the responsibilities" of SafeSport.

137.    SafeSport's responsibilities include developing a Code that complies with the SafeSport Act.

138.    SafeSport's responsibilities include complying with the SafeSport Act.

139.    Defendant SafeSport's Code exceeds the power granted by the SafeSport Act.

140.    Defendant SafeSport exceeded the power granted by the SafeSport Act when it pursued a disciplinary action against Plaintiff for an allegation concerning a nonathlete that occurred outside of sports.

141.    The SafeSport Act requires Defendant SafeSport to "develop training, oversight practices, policies, and procedures to prevent the abuse . . . of amateur athletes participating in amateur athletic activities through [NGBs]." *Id.* § 220541(a)(1)(C).

142.    The SafeSport Act does not grant SafeSport the power to exercise jurisdiction over conduct concerning nonathletes outside of sports.

143.    The SafeSport Act requires Defendant SafeSport to "establish mechanisms that allow for the reporting, investigation, and resolution . . . of alleged abuse in violation of the Center's policies and procedures." *Id.* § 220541(a)(1)(D).

144.    The SafeSport Act does not grant SafeSport the power to investigate and adjudicate matters concerning allegations of abuse against nonathletes outside of sports.

145.    The SafeSport Act requires Defendant SafeSport to "ensure that the [NGBs] and [USOPC] implement and follow the policies and procedures developed by the Center to prevent and promptly report instances of abuse of amateur athletes." *Id.* § 220541(a)(1)(F)(i).

146.    The SafeSport Act does not require Defendant SafeSport to prevent and report instances of alleged abuse of nonathletes.

147.    The SafeSport Act does not grant SafeSport the power to exercise jurisdiction over conduct concerning nonathletes outside of sports.

148.    The SafeSport Act states that nothing in section 220541 should be construed to (i) "require the Center to meet a burden of proof higher than the preponderance of the evidence"; (ii) give rise to a claim under State law or to create a private right of action; or (iii) "to render the Center a state actor." *Id.* § 220541(a)(1)(2)(A)-(D).

149.    The SafeSport Code fails to presume a respondent innocent or not responsible, unfairly placing a significant burden on respondent to prove his or her innocence.

150.    Congress did not give SafeSport the power to regulate all aspects of a participant's life. Congress only gave SafeSport the power to protect amateur athletes from abuse. The SafeSport Code, as applied to Plaintiff in this case, exceeds the power granted by Congress.

151.     Plaintiff seeks a declaration that the SafeSport Code violates the SafeSport Act. Plaintiff further requests that SafeSport be permanently enjoined from continuing to enforce the sanction against Plaintiff.

### COUNT III

### BREACH OF CONTRACT
### (Against Defendant SafeSport)

152.     The foregoing allegations are incorporated as if fully set forth herein.

153.     At all times relevant hereto, a contractual relationship existed between SafeSport and Plaintiff by virtue of Plaintiff's membership with U.S. Paralympic Snowboarding and as defined in Defendant SafeSport's appliable policies and procedures governing the disciplinary process, including but not limited to the SafeSport Code (Ex. 1), the USOPC Athlete Safety Policy (*see* excerpt of Policy, Ex. 2, at 47), the U.S. Paralympic Snowboarding 2019 Athlete Agreement (*see* excerpt of signed Agreement, Ex. 2, at 48-49), the United States Olympic Committee Code of Conduct for U.S. Paralympics National Teams and U.S. Paralympics Programs (*see* excerpt, Ex. 2, at 50-52), the U.S. Ski & Snowboard Athlete Safety Policy (*see* excerpt, Ex. 2, at 53-57), and the U.S. Ski & Snowboard Code of Conduct (*see* excerpt, Ex. 2, at 58-59).

154.     Through its policies and procedures, Defendant SafeSport provided specific, enforceable provisions outlining certain procedures that were to be followed by SafeSport before Plaintiff could be sanctioned for violation of a SafeSport policy.

155.     Any failure to follow promised procedures in the disciplinary process would therefore constitute a violation of SafeSport's contract with its athletes.

156.     Accordingly, through the documents that it publishes and provides to athletes, SafeSport makes express and implied contractual commitments to athletes involved in the disciplinary process and/or the investigation of potential violations of the policies.

157.    Under Colorado law, the elements of a claim for breach of contract are (i) the existence of a contract, (ii) the plaintiff's performance of the contract or justification for nonperformance, (iii) the defendant's failure to perform the contract, and (iv) the plaintiff's damages as a result of the defendant's failure to perform the contract. *Univ. of Denver v. Doe*, 547 P.3d 1129, 1139 (Colo. 2024).

158.    Like most jurisdictions, Colorado recognizes that every contract contains an implied duty of good faith and fair dealing. *Id*. at 1140.

159.    Based on the aforementioned facts and circumstances, Defendant SafeSport created express and implied contracts when Plaintiff was offered, and Plaintiff accepted and agreed to be a member of U.S. Paralympics Snowboarding and thereby agreed to be subject to and comply with Defendant SafeSport's SafeSport Code.

160.    Defendant SafeSport breached its agreements with Plaintiff during the investigation and adjudication process by failing to comply with the procedural requirements of the SafeSport Code.

161.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment fees, attorney's fees, expenses, costs, and disbursements.

**COUNT IV**

**ESTOPPEL AND RELIANCE**
**(Against Defendant SafeSport)**

162.    The foregoing allegations are incorporated as if fully set forth herein.

163.    SafeSport's various policies constitute representations and promises by SafeSport that SafeSport should reasonably expect to induce action or forbearance by Plaintiff.

164.    To his detriment, Plaintiff relied on the express and implied promises and representations made by SafeSport in its various policies and procedures.

165.    Based on the foregoing, SafeSport is liable to Plaintiff based on the principle of estoppel.

166.    As a direct, reasonable, and foreseeable consequence of Defendant SafeSport's breaches, Plaintiff has sustained damages including, without limitation, emotional distress, economic and reputational harm, an inability to compete in the Paralympic Movement, detrimental impact on his future career, and other direct and consequential damages.

167.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorney's fees, expenses, costs, and disbursements.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

i.    On the first cause of action, declare that Defendant SafeSport and Defendant Vigil contravened SafeSport's own internal rules by pursuing matters outside SafeSport's jurisdiction and failed to comply with the SafeSport Act and a judgment awarding Plaintiff damages in an amount to be determined at trial, plus prejudgment interest, as well as injunctive relief directing SafeSport to (a) vacate the disciplinary findings and decisions; (b) grant an expungement of Plaintiff's SafeSport disciplinary record; (c) rescind any sanction, including the record of Plaintiff's permanent ineligibility from SafeSport's Database; (d) and permanently destroy any record of these allegations.

ii.    On the second cause of action, declare that the SafeSport Code violates the SafeSport Act and a judgment awarding Plaintiff damages in an amount to be determined at trial, plus prejudgment interest, as well as injunctive relief directing SafeSport to (a) vacate the disciplinary findings and decisions; (b)

grant an expungement of Plaintiff's SafeSport disciplinary record; (c) recind any sanction, including the record of Plaintiff's permanent ineligibility from SafeSport's Database; (d) and permanently destroy any record of these allegations.

iii.    On the third and fourth causes of action, judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotion and psychological damages, damages to reputation, past and future economic losses, loss of career opportunities, loss of future career prospects, plus prejudgment interest, attorney's fees, expenses, costs, and disbursements.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury of all triable issues in the present matter.


Respectfully submitted the 10th day of October 2025


_s/ Jason Savela_
Jason Savela, Esq.
The Savela Law Firm, P.C.
3825 Iris Ave., Suite 100
720-260-7392
jason@savelaw.net

**CERTIFICATE OF SERVICE**

I certify that on this 10th day of October 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

*s/ Jason Savela*